Mellon National Bank and Trust Company et al., Appellants, *v.* Wagner.

Argued April 12, 1962. Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*John B. Nicklas, Jr.*, with him *McCrady & Nicklas*,
for appellants.

*George R. Craig*, for appellee.

OPINION BY FLOOD, J., June 13, 1962:

This action in replevin to recover a piece of tapestry
was tried by a judge without a jury. His finding that
the plaintiffs had not established title or right to pos-
session of the tapestry was affirmed by the court en
banc. The credibility of the witnesses and the weight
to be accorded their testimony were for the trial judge.

*D'Angelo Estate v. Armor Company,* 198 Pa. Superior Ct. 283, 182 A. 2d 247 (1962). His general finding for the defendant has the force and effect of a jury's verdict. Ibid. The appellants' argument that his decision is against the weight of the evidence was peculiarly for the court below, and this Court will not reverse unless the lower court committed an abuse of discretion in affirming his decision. Ibid.

The plaintiffs are the executors under the last will and testament of Dr. Voigt Mooney, an orthopedic surgeon, who had rendered professional services to the defendant. The defendant was unable to pay the decedent's bill in the amount of $200 and, in the fall of 1938, she offered to make a chair cover for Dr. Mooney or a purse for his wife in payment. Both offers were refused.

On February 13, 1939, the doctor's secretary wrote to the defendant that the doctor wished her to stop around to see him and had something for her to make. She went to his office a week or so later. He exhibited to her a picture of Da Vinci's Last Supper and asked if she could depict this in needlepoint. She undertook to do the work, made or procured her own pattern or charts and bought some yarn for the tapestry in Berlin for the sum of $17 and some other materials in New York for the sum of $8.45. On September 11, 1939, Dr. Mooney gave her a check in the sum of $25.45 and on February 2, 1940, April 5, 1940, and November 15, 1940, he gave her additional checks in the amount of $25 each. Each of the checks bore the notation, placed there by the doctor's secretary at his direction: "On account for tapestry [of] [Our] Lord's Last Supper . . ." The defendant cashed the first three of these checks but on November 20, 1940, sent a letter to Dr. Mooney enclosing the fourth check and $76. Dr. Mooney, under date of November 22, 1940, sent the check and $76 back to the defendant.

Dr. Mooney issued a writ of replevin with bond for the tapestry in 1943, and, on his motion, it was impounded in the custody of the sheriff. In 1949 a suggestion of Dr. Mooney's death was filed and his executors were substituted as plaintiffs.

Since the important question in a replevin action is whether the plaintiffs are entitled to immediate possession of the property as against the defendant, the real inquiry here is whether the doctor ever obtained title to the property and the right to its possession as against the defendant.

1. Plaintiffs contend that the trial judge erred in failing to find that the defendant agreed to make the tapestry for the doctor in payment for his services. Mrs. Perriello, the doctor's secretary, testified upon direct examination for the plaintiffs, that the defendant asked Dr. Mooney if she could make him a tapestry or an evening purse or "anything like that" in the line of needlepoint in payment of the bill and Dr. Mooney said that would be all right; that she offered to make him "whatever he wanted her to make"; that the doctor offered to pay her for the materials when they discussed her making Da Vinci's "Last Supper"; and that the witness saw the doctor give the defendant "checks for materials". However, on cross-examination Mrs. Perriello stated that the original offer to make the doctor a chair cover or a needlepoint purse in payment of his bill had been made by the defendant, that the doctor rejected these offers, that the defendant made no further proposals after these rejections, that the discussion relating to the "Last Supper" was initiated by the doctor, and that it occurred almost a year after the defendant's first proposal. This witness further testified that, when the defendant received the various checks, she did not present any receipted bills or anything of that nature to establish the amounts she had paid for materials.

These statements of Mrs. Perriello on cross-examination tend to confirm the defendant's testimony that the transaction involving the Last Supper was separate and distinct from her previous offers to make the doctor a chair cover or a purse in payment for his services and that the checks in question were not given in payment for materials, but merely to give the defendant "something to go on". Since it does not appear from the record that the defendant paid anything for materials, over and above the original sum of $25.45, the checks, particularly the last three, also tend to confirm the defendant's testimony that this tapestry was not intended as payment for the doctor's services, and that, while the doctor may have requested the work to be done and made payments for the purpose of attempting to secure rights in the finished work, the parties never came to terms on a price. Under these circumstances, the trial judge cannot be held to have committed error in failing to find that the defendant agreed to make this tapestry in payment of the doctor's bill or for his services.

Since the plaintiffs failed to prove that the defendant agreed to make the tapestry in payment of the doctor's bill or his services, and they neither pleaded nor proved any other agreement respecting the price, the checks at best tend to establish only an agreement too indefinite to be enforced.

Even if we were to conclude that there was a contract and that a reasonable price was to be paid under the Uniform Sales Act of May 19, 1915, P. L. 543, §9, 69 PS §81, then in force, the plaintiffs could not prevail because they produced no evidence of what a reasonable price would be or that such a price had been tendered or paid by their decedent so as to vest him with title and right to possession of the tapestry.

2. Plaintiffs argue that title to the yarn passed to the decedent in September, 1939, when he gave her his

check for $25.45, the exact amount of the cost of the materials. However, this check, like the three given later, bears only the notation: "On account for tapestry [of] [Our] Lord's Last Supper . . ." It does not indicate that it was in payment for the materials. Mrs. Perriello, the plaintiffs' witness, who said she placed this notation on the check at the doctor's direction, testified that at or just before the time when this check was delivered, the defendant had brought the materials in and had not yet done any work on the tapestry. The defendant, on the other hand, testified that she bought these materials and took them to the doctor in April, 1939; that she told him what they cost, but he gave her nothing at that time; that she brought it in on May 4, 1939, after the work had been begun, and again on September 11, 1939, so that he might see the progress of the work; that the left side of the table, all six apostles, the figure of Christ and the heads of the remaining apostles had been completed on September 11th; and Dr. Mooney at that time gave her the first check stating that its purpose was to give her "something to go on". She did not request the payment and he did not say it was for the materials.

Under these circumstances we cannot say that the trial judge had no basis for concluding that title to the yarn did not pass to the decedent in September, 1939. If he believed the defendant, rather than Mrs. Perriello, the payment in September, 1939, did not constitute a purchase of the materials.

Furthermore, even if we were to conclude that Dr. Mooney had acquired title to the materials at that time, "[t]here is no doubt that a bailee who at the request of a bailor does work or adds materials to a chattel is entitled to a possessory lien for the value of the work performed: Restatement, Security, §61(a)." *International Electronics Co. v. N. S. T. Metal Products Co., Inc.,* 370 Pa. 213, at page 222, 88 A. 2d 40 at page

45 (1952). Consequently, even proof of title would not entitle the plaintiffs to possession as against the defendant so long as she remains unpaid for her work.

3. The plaintiffs argue finally that the letter of the defendant to the plaintiff returning the payments is a declaration against interest which confirms the existence of the contract alleged. However, the language of the letter is not an admission of any contract such as the plaintiffs claim. The letter indicates at best that there was no agreement as to how much money should be paid to the defendant. This letter cannot be interpreted as an admission that the defendant had agreed to make this tapestry, which she states in the letter would be worth several thousands of dollars when completed, in return for services for which she had been billed only $200.

There is no right of action in replevin unless the plaintiffs have a right to immediate possession. *International Electronics Co. v. N. S. T. Metal Products Co., Inc.*, supra. Since the court below properly concluded that the plaintiffs did not prove any such right in their decedent or in themselves, either at the time the property was seized under the writ, or at any time thereafter, their complaint in replevin was properly dismissed.

Decree affirmed.